William H. HARRELL, Jr., Harrell & Harrell, P.A., and Public Citizen, INC., Plaintiffs,

v.

The FLORIDA BAR, et al., Defendants.

**Case No. 3:08–cv–15–J–34TEM.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 30, 2011.

Brian Wolfman, Gregory A. Beck, Public Citizen Litigation Group, Washington, DC, David Michael Frank, David Frank Injury Law, PA, Tallahassee, FL, for Plaintiffs.

Barry Scott Richard, Bridget Kellogg Smitha, Mary Hope Keating, Tallahassee, FL, for Defendants.

## ORDER

MARCIA MORALES HOWARD, District Judge.

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Summary Judgment and Memorandum in Support of Motion (Doc. No. 62; Harrell Motion) filed on November 18, 2010. In addition, on December 17, 2010, Defendants [1] filed Defendants' Motion for Summary Judgment and Memorandum of Law in Support of Motion and in Opposition to Plaintiff's [sic] Motion for Summary Judgment (Doc. No. 65; Bar Motion). Harrell filed Plaintiffs' Response to Defendants' Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment (Doc. No. 67; Harrell Response) on January 18, 2011. Thereafter, on January 25, 2011, the Bar filed Defendants' Reply Memorandum on Motions for Summary Judgment (Doc. No. 68; Bar Reply). On July 7, 2011, the Court held a hearing on these motions. *See* Minute Entry (Doc. No. 74; Motion Hearing). Accordingly, this matter is fully briefed and ripe for review.

## I. Procedural History

Harrell initiated this action on January 7, 2008, by filing a Complaint for Declaratory and Injunctive Relief (Doc. No. 1; Complaint) against the Bar, asserting, pursuant to 42 U.S.C. § 1983, that certain provisions of The Florida Bar's Rules of Professional Conduct contained within the Rules Regulating The Florida Bar (Rules) violate the First and Fourteenth Amendments, and seeking to invalidate these rules and restrain further enforcement of the provisions at issue. *See* Complaint at 2–3. In the Complaint, Harrell alleged: (1) "a broad facial challenge that nine advertising-related provisions of the [Rules] are so vague as to violate his due process rights," (2) an as-applied challenge, that "the same rules violate his First Amendment rights by prohibiting him from advertising in a variety of specific ways, including through the use of a slogan— 'Don't settle for less than you deserve,' " and (3) that "a requirement that lawyers submit proposed radio and television advertisements to the Florida Bar for review at least twenty days before their dissemination" amounted to an unconstitutional

---

1. The Court will refer to Defendants as the Florida Bar (the Bar) and to Plaintiffs as William H. Harrell, Jr. (Harrell).

burden on his speech. *See Harrell v. Fla. Bar,* 608 F.3d 1241, 1247 (11th Cir.2010). On January 28, 2008, the Bar filed a motion requesting that the Court abstain from hearing claims in this matter pertaining to Rule 4–7.5(b)(1)(C)[2] "because an amendment to this Rule is currently under consideration." *See* The Florida Bar Defendants' Motion to Abstain or in the Alternative Strike and Supporting Memorandum of Law (Doc. No. 12; Motion to Abstain) at 1. However, the Court rejected the Bar's abstention request stating that "[t]his Court is duty-bound to address properly raised constitutional issues, and Defendants' non-committal remark that the Bar may alter a challenged rule does not relieve this Court of its duties." *See* Order (Doc. No. 16) (Covington, J.), entered February 29, 2008, 2008 WL 596086.

On May 1, 2008, the Bar filed The Florida Bar Defendants' Motion to Dismiss for Lack of Case or Controversy and Supporting Memorandum of Law (Doc. No. 22; Motion to Dismiss). In the Motion to Dismiss, the Bar argued, among other things, that the Bar's recent approval of Harrell's use of the phrase, "Don't settle for less than you deserve," rendered the matter moot because Harrell could no longer be disciplined for disseminating any of the advertisements previously submitted to the Bar for approval. *See* Motion to Dismiss at 3. The Bar reasserted this argument in The Florida Bar Defendants' Motion for Summary Judgment and Memorandum of Law (Doc. No. 25; Motion for Summary Judgment), filed on

September 15, 2008. In addition, the Bar maintained that the Florida Bar Board of Governors (the Board)[3] would be petitioning the Florida Supreme Court to amend the Rules to delete Rule 4–7.5(b)(1)(C). *Id.* at 4–5. Although the Bar did not affirmatively request that the Court abstain from considering Harrell's claims or resolving this action, the Bar did "seem to suggest that an abstention may be more appropriate [at that time] as the amendment process [was] much further along than when they filed the Motion to [Abstain]...." *See Harrell v. Fla. Bar (Harrell I),* No. 3:08–cv–15–J–34TEM, 2009 WL 6982396, at *6 n. 4 (M.D.Fla. Mar. 30, 2009).

On March 30, 2009, the Court entered an Order (Doc. No. 50) granting summary judgment in favor of the Bar as to all of Harrell's claims. *See Harrell I,* 2009 WL 6982396, at *31. The Court held that the Board's approval of Harrell's current advertisements rendered Harrell's challenges as to those advertisements moot. *Id.* Next, with respect to Harrell's proposed advertisements, the Court concluded that, except as to Harrell's prior restraint challenge to Rule 4–7.7(a), Harrell did not have standing to assert his facial and as-applied challenges to the Rules, or, if Harrell did have standing, that those challenges were premature. *Id.* at *29. Finally, the Court considered the challenge to Rule 4–7.7(a) on the merits and determined that Rule 4–7.7(a) was not an unconstitutional prior restraint. *Id.* at *31.

Harrell appealed this Court's ruling, and on June 17, 2010, the Eleventh Circuit

---

**2.** Rule 4–7.5(b)(1)(C) prohibits the use of "any background sound other than instrumental music" in television and radio advertisements.

**3.** The Board of Governors is the Florida Bar's chief governing body. *See* Second Harrell

Declaration (Doc. No. 29, Ex. 1; Harrell Decl.), Ex. 13: Florida Bar Procedures for Issuing Advisory Opinions Relating to Lawyer Advertising or Solicitations (Procedures) § 4(h).

Court of Appeals affirmed in part, reversed in part, and remanded the matter to this Court "for consideration of Harrell's justiciable claims on the merits." *See Harrell v. Fla. Bar (Harrell II),* 608 F.3d 1241, 1271 (11th Cir.2010). Specifically, the Eleventh Circuit held as follows:

> Harrell has standing to challenge Rules 4–7.1, 4–7.2(c)(1)(G), 4–7.2(c)(2), 4–7.2(c)(3), and 4–7.5(b)(1)(A) on vagueness grounds, and those vagueness claims are also ripe for review. Further, Harrell's as-applied challenge to the rejection of his slogan "Don't settle for less than you deserve" is not moot. However, although Harrell has standing to challenge all nine of the Bar's identified rules as unconstitutional encroachments on his desired speech, these as-applied claims are not ripe for judicial review, with the single exception of Harrell's attack on Rule 4–7.5(b)(1)(C), prohibiting background sounds other than instrumental music. Harrell's constitutional challenge to the Bar's pre-filing rule, Rule 4.7.7(a)(1)(A), fails because the rule is not a prior restraint and directly serves important state interests in a reasonably well-tailored fashion.

*See Harrell II,* 608 F.3d at 1271. Upon remand, Harrell filed an Amended Complaint for Declaratory and Injunctive Relief (Doc. No. 59; Amended Complaint) on September 20, 2010, setting forth those claims found to be justiciable in *Harrell II.* The Bar filed Defendants' Consented Amended Answer to Amended Complaint (Doc. No. 61; Amended Answer) on November 4, 2010. Thereafter, the parties filed the instant cross-motions for summary judgment seeking resolution of this matter. The Court heard argument from the parties at the Motion Hearing on July 7, 2011. At the Hearing, the parties agreed that there are no disputed issues of material fact and that the Court should therefore resolve this matter on summary judgment.[4]

## II. Background Facts

The Eleventh Circuit set forth in detail the factual background of this case in *Harrell II* such that the Court need not restate those facts here. *See Harrell II,* 608 F.3d at 1247–53. In accordance with the Eleventh Circuit's ruling, the following Rules remain at issue in this lawsuit. Rule 4–7.1 provides general regulations applicable to all types of attorney advertising, including a list of the permissible forms of advertising as well as the types of communications covered by the Rules. The comment to this Rule provides a list of information that may be contained in the advertisement and explains that "regardless of medium, a lawyer's advertisement should provide only useful, factual information presented in a nonsensational manner." Rule 4–7.1, cmt.

In Rule 4–7.2, the Bar requires certain information and disclosures to be included in all advertisements, provides a specific

4. In the Bar Motion, the Bar asserts that "[t]his Court's ruling that Public Citizens [sic] has no standing in this matter was not appealed and is the law-of-the-case." *See* Bar Motion at 1 n. 1. However, to the extent this footnote could be construed as a challenge to Public Citizen's standing, the Bar withdrew from this position at the Motion Hearing, stating that it has no objection to Public Citizen's participation in the case. Indeed, because the Eleventh Circuit found that Harrell has standing to bring these claims, Public Citizen may also remain in the lawsuit. *See Harrell II,* 608 F.3d at 1253 n. 3 ("[O]nly one party need have standing to satisfy the case or controversy requirement." (citing *Ouachita Watch League v. Jacobs,* 463 F.3d 1163, 1170 (11th Cir.2006))).

list of information that may be contained in advertisements, and prohibits advertisements from containing certain types of communications. Harrell challenges in particular Rule 4–7.2(c)(1)(G) which provides that:

> [a] lawyer shall not make or permit to be made a false, misleading, or deceptive communication about the lawyer or lawyer's services. A communication violates this rule if it: ... (G) promises results;

Rule 4–7.2(c)(1)(G). Additionally, Harrell contests the validity of Rules 4–7.2(c)(2) and 4–7.2(c)(3) which preclude an attorney from making "statements describing or characterizing the quality of the lawyer's services in advertisements and unsolicited written communications" as well as from including "any visual or verbal descriptions, depictions, illustrations, or portrayal of persons, things, or events that are deceptive, misleading, manipulative, or likely to confuse the viewer." Rule 4–7.5 governs advertisements published using electronic media, other than computer-based communications, such as television and radio. This Rule provides certain additional restrictions as well as a list of the permissible content for these advertisements. Specifically, Harrell challenges Rule 4–

7.5(b)(1)(C) which prohibits the use of "any background sound other than instrumental music," as well as Rule 4–7.5(b)(1)(A) which prohibits "any feature that is deceptive, misleading, manipulative, or that is likely to confuse the viewer." Harrell requests that the Court declare these Rules to be unconstitutional and issue a permanent injunction against their enforcement.[5] *See* Amended Complaint at 10–11.

### III. Standard of Review

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).[6] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *See Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996)(quoting

---

**5.** In the Amended Complaint, Harrell also requests that the Court enjoin the enforcement of Bar Rule 4–7.2(c)(1)(I) which prohibits statements that "compare[ ] the lawyer's services with other lawyers' services." *See* Amended Complaint at 10. However, in *Harrell II,* the Eleventh Circuit found that Harrell's claims as to that Rule were not justiciable. *Harrell II,* 608 F.3d at 1257, 1264–65. Harrell conceded at the Motion Hearing that he cannot challenge Bar Rule 4–7.2(c)(1)(I) pursuant to the Eleventh Circuit's holding, and thus, withdrew his challenge to that Rule.

**6.** Civil Procedure Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."

Fed.R.Civ.P. 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

*Id.* Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

*Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir.1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004). The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir.1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995)(citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir.1994)).

## IV. Vagueness

### A. Summary of the Arguments

In the Harrell Motion, Harrell challenges five of the Rules on vagueness grounds. First, Harrell asserts that the Rules prohibiting "quality of service" statements (Rule 4–7.2(c)(2)) and statements which "promise results" (Rule 4–7.2(c)(1)(G)) are unconstitutionally vague. Harrell maintains that the Florida Bar's arbitrary and unpredictable application of those Rules demonstrates that the Rules have no standards to guide their enforcement. *See* Harrell Motion at 8–10. With respect to the two Rules prohibiting "manipulative" advertisements (Rules 4–7.2(c)(3) and 4–7.5(b)(1)(A)) and the comment to Rule 4–7.1 requiring that ads contain only "useful, factual information," Harrell contends, not only that the Florida Bar has applied those provisions arbitrarily, but also that the text of those Rules is inherently vague. *See* Harrell Response at 2–4. In support of his vagueness challenges, Harrell juxtaposes various advertising decisions by the Bar and contends that these decisions reflect inconsistent and arbitrary applications of the Rules.

In the Bar Motion, the Bar argues that Harrell cannot prevail in his challenge to Rule 4–7.2(c)(2) prohibiting "quality of service" statements because the Eleventh Circuit previously rejected a vagueness challenge to a similar rule in *Mason v. Fla. Bar*, 208 F.3d 952 (11th Cir.2000). Additionally, the Bar maintains that the terms "useful," "promises results," and "manipulative" are commonly understood and do not "fail to give a person of ordinary intelligence fair notice of what is required and forbidden." *See* Bar Motion at 7–8. With respect to "manipulative," the Bar relies on securities statutes and rules using that term to support its contention that the word is not unconstitutionally vague. *Id.* at 8–9. The Bar also argues that because "manipulative" is used in conjunction with "deceptive" and "misleading," the Rules prohibiting manipulative advertisements

"give a lawyer a reasonable opportunity to know what is prohibited." *Id.* at 9. In addition, the Bar maintains that the availability of procedures for lawyers "to clarify the rules in question and to apprise lawyers of what the rules require" dictates against a finding that the Rules are impermissibly vague. In the Bar Motion, the Bar responds to Harrell's purported examples of arbitrary applications of the Rules to specific advertisements by offering explanations for the allegedly inconsistent outcomes. *See id.* at 11–13; *see also id.,* Ex 1: Third Affidavit of Elizabeth Clark Tarbert (Third Tarbert Aff.) ¶¶ 8–12; Second Affidavit of Elizabeth Clark Tarbert (Doc. 33, Ex. 2; Second Tarbert Aff.) ¶¶ 11–13. Finally, the Bar informs the Court that it is in the process of substantially revising the Rules regulating lawyer advertising. *Id.* at 22. Proposed revisions to the Rules were approved by the Board of Governors on May 27, 2011, and submitted to the Florida Supreme Court for approval on July 5, 2011. *See* Notice of Filing Proposed Rules (Doc. No. 73); *see also id.,* Ex. A: Proposed Amendments in Legislative Format (Revised Rules). Although the Bar does not affirmatively request that the Court stay this matter or abstain from considering the pending Motions, the Bar suggests that "[t]he Court may want to consider delaying final consideration of summary judgment motions and the filing of supplemental memoranda until after final disposition of the proposed rules

revisions." *Id.* at 23. The Bar adds that "there seems to be little benefit to adjudicating rules that may cease to exist by the time the challenge to the current rules is finally resolved." *See* Bar Reply at 10. Indeed, at the Motion Hearing, counsel for the Bar informed the Court that the Bar has taken a position, although subject to the Florida Supreme Court's countermand, that it will not prosecute any violations of the current Rules if the conduct at issue would not be a violation under the Revised Rules.[7]

## B. Applicable Law

█ Harrell asserts that Rules 4–7.2(c)(2) (quality of services), 4–7.2(c)(1)(G) (promises results), 4–7.2(c)(3) (manipulative), 4–7.5(b)(1)(A) (manipulative), and the "useful and factual" requirement contained in the comment to Rule 4–7.1 are impermissibly vague and therefore, facially invalid under the Fourteenth Amendment's Due Process Clause. "The traditional test for whether a statute or regulation is void on its face is if it is so vague that 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *See DA Mortg., Inc. v. City of Miami Beach,* 486 F.3d 1254, 1271 (11th Cir.2007) (quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)); *see also Mason v. Fla. Bar,* 208 F.3d 952, 958 (11th Cir.2000). In such cases, the vague regulation is void on its face because it

---

7. The Bar's argument with respect to the Revised Rules is unavailing. Although the Bar does not cite any legal authority in support of its position, the Bar appears to request that this Court refrain from deciding this case at least until such time as the Florida Supreme Court makes a decision on whether to adopt the Revised Rules. However, neither the parties nor this Court can predict when such a decision will be forthcoming, and indeed, it

may be a year or more before the Florida Supreme Court issues a ruling on this matter. Moreover, despite the Bar's confidence in the Revised Rules, the Florida Supreme Court may reject the proposed revisions in whole or in part. As such, this Court will not delay the resolution of this case on the merits solely because the Bar hopes that the Florida Supreme Court will adopt the Revised Rules, as drafted, some time in the future.

"may trap the innocent by failing to give fair notice of what is prohibited, may risk arbitrary or discriminatory enforcement by delegating too much authority to enforcers, and—when the regulation implicates First Amendment freedoms—may chill the exercise of those freedoms." *See Konikov v. Orange Cnty., Fla.*, 410 F.3d 1317, 1329 (11th Cir.2005) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Accordingly, "a claimant asserting that a statute is void for vagueness [must] prove either that the statute fails to give fair notice of wrongdoing or that the statute lacks enforcement standards such that it might lead to arbitrary or discriminatory enforcement." *Id.; see also Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir.2009) ("To overcome a vagueness challenge, statutes must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' and 'must provide explicit standards for those who apply them.'" (quoting *Grayned*, 408 U.S. at 108, 92 S.Ct. 2294)).

■ "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). "[T]he most important factor affecting the clarity that the Constitution demands of a law is whether it threatens the exercise of constitutionally protected rights." *Id.* at 499, 102 S.Ct. 1186. Thus, "the Constitution demands a high level of clarity from a law if it threatens to inhibit the exercise of a constitutionally protected right, such as the right of free speech or religion." *Konikov*, 410 F.3d at 1329. In contrast,

economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186 (footnotes omitted). Moreover, the Supreme Court "has 'expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.'" *Leib*, 558 F.3d at 1310 (quoting *Hoffman Estates*, 455 U.S. at 498–99, 102 S.Ct. 1186). "Indeed, a civil statute is unconstitutionally vague only if it is so indefinite as 'really to be no rule or standard at all.'" *Id.* (quoting *Seniors Civil Liberties Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1036 (11th Cir.1992)).

■ Here, the Bar Rules at issue are civil, rather than criminal in nature, and concern economic activity, suggesting that, pursuant to the above guidelines, the highest standard of clarity is not required. However, the Rules regulate lawyer advertising which is "a constitutionally protected form of commercial speech." *See Mason*, 208 F.3d at 955. Commercial speech is expression that is "inextricably related to the economic interests of the speaker and audience," and is "undeniably entitled to substantial protection under the First and Fourteenth Amendments of the United States Constitution." *Id.* Nevertheless, such speech holds a "subordinate position in the scale of First Amendment values," *see Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d

444 (1978).[8] Thus, although the challenged Bar Rules do affect the exercise of constitutionally protected rights, given the subordinate position of commercial speech under the First Amendment, the Court will require Harrell to demonstrate a greater level of vagueness than would be required where core First Amendment speech is at issue. *See Capoccia v. Comm. on Prof'l Standards*, No. 89–cv–866, 1990 WL 211189, at *9 (N.D.N.Y. Dec. 20, 1990) ("[T]he legal principles . . . generally applicable to vagueness challenges[ ] are equally applicable here where there is presented a challenge to the clarity and specificity of rules governing a form of commercial speech; all the more is this so, given that the Supreme Court has held that the overbreadth doctrine . . . has no pertinence in the commercial speech context, and no criminal penalty is involved." (internal citations omitted)); *see also First Vagabonds Church of God v. City of Orlando, Fla.*, 610 F.3d 1274, 1289 n. 15 (11th Cir.2010) ("This case does not directly involve the same sort of core First Amendment concerns; so we should not conduct the same sort of searching facial review [as implemented in *Konikov*].") *vacated by* 616 F.3d 1229, and *reinstated in pertinent part by* 638 F.3d 756, 763 (11th Cir.2011). Accordingly, to sustain a facial challenge, Harrell "must prove the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *See Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. 1186 (internal citation omitted) (quoting *Smith v. Goguen*, 415 U.S. 566, 578, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)); *see also Capoccia*, 1990 WL 211189, at *10. As such, Harrell must show that the challenged provisions simply have *"no core."* *Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. 1186 (internal quotation omitted); *see also Harrell II*, 608 F.3d at 1253, 1264 n. 8.[9]

■ When reviewing an enactment for vagueness, courts must remember that

---

**8.** Because of this subordinate position, "the Supreme Court has held the overbreadth doctrine inappropriate in commercial speech cases." *See Jacobs v. Fla. Bar*, 50 F.3d 901, 907 (11th Cir.1995)(internal footnotes omitted). However, "the Court has not limited the reach of the vagueness doctrine in the same way." *See id.* at 907 (internal footnotes omitted). Indeed, in *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986), the Supreme Court considered a facial vagueness challenge to an advertising restriction on pure commercial speech. *See Posadas*, 478 U.S. at 331, 340, 347–48, 106 S.Ct. 2968.

**9.** While the Court finds that the above standard is appropriate here, the Court notes that the law pertaining to facial vagueness challenges is not entirely clear. *See Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1330 (11th Cir.2001); *see also United States v. Al-Arian*, 329 F.Supp.2d 1294, 1301 (M.D.Fla. 2004). In addition, the fact that the Rules in this case implicate commercial speech, rather than core First Amendment concerns, further complicates the analysis. However, the Court finds added support for applying the aforementioned standard in that, upon careful review, the Eleventh Circuit's decision in *Harrell II* appears to suggest that the "no core" standard set forth in *Hoffman Estates* applies in this case. *See Harrell II*, 608 F.3d at 1253, 1260 n. 7. To the extent Harrell must establish that " 'no set of circumstances exists under which the [Rule] would be valid,' " as required by the hotly debated *Salerno* rule, *see Horton*, 272 F.3d at 1329, 1330 (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)), the Court observes that a rule which has "no core" is unconstitutional in all its applications. *See City of Chicago v. Morales*, 527 U.S. 41, 71, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)("[I]f every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications.")(Breyer, J., concurring in part and concurring in the judgment).

"[l]anguage has limits and precision is rarely possible." *See First Vagabonds,* 610 F.3d at 1286. Indeed, as drafters are " '[c]ondemned to the use of words, we can never expect mathematical certainty from our language.' " *Id.* (quoting *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294). "Where a statute does not define a term, a court must also give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise." *See High Ol' Times, Inc. v. Busbee,* 673 F.2d 1225, 1229 (11th Cir.1982). The Court must also "bear in mind that '[t]he applicable standard ... is ... the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important.' " *Internat'l Soc. For Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 831 (5th Cir.1979); [10] *see also Mason,* 208 F.3d at 959 (" 'The root of the vagueness doctrine is a rough idea of fairness.' " (quoting *Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974))). Thus, "slightly more imprecision" is tolerated in circumstances where a less formalized custom and usage will likely develop (i.e., patterns of enforcement or tacit understandings) and clarify much of the "inevitable imprecision." *Id.* at 831. Additionally, "the availability of advisory opinions to gauge the application of [a particular rule] to specific situations bolsters its validity." *See Mason* 208 F.3d at 959 n. 4 (citing *Arnett v. Kennedy,* 416 U.S. 134, 160, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)).

### C. Discussion

#### 1. "Quality of Legal Services" and "Promises Results"

 Rule 4–7.2(c)(2) prohibits "statements describing or characterizing the quality of the lawyer's services." The Florida Supreme Court has broadly interpreted this Rule to apply, not only to the quality of the services the lawyer provides, but also to the qualities (i.e., traits or characteristics) of the lawyer himself. *See Fla. Bar v. Pape,* 918 So.2d 240, 244 (Fla. 2005). In *Mason,* the Eleventh Circuit considered the language of a similar Rule, former Rule 4–7.2(j), which prohibited "statements made by lawyers in advertisements or written communications that are 'self laudatory' or that describe or characterize the quality of legal services." *Mason,* 208 F.3d at 954. The court rejected Mason's argument that Rule 4–7.2(j) was infirm "because it [was] subject to arbitrary decision making," and held that the language of the rule was "plain and would adequately put Bar members on notice that merely self-referential and laudatory statements or statements describing the quality of their legal services are prohibited." *Mason,* 208 F.3d at 959. Although the issues considered in the *Mason* case are substantially similar to the instant challenge to Rule 4–7.2(c)(2), *Mason's* holding is not dispositive of this matter, as the Bar suggests. Here, the Court has before it prior applications of this Rule which Harrell contends demonstrate the Rule's arbitrary enforcement and lack of standards. *See* Plaintiffs' Notice Identifying Inconsistent Applications of Advertising Rules (Doc. No. 75; Notice). Whereas the court in *Mason* determined that the term "quality of services" provided adequate notice of what is prohibited, *see Mason,* 208 F.3d at 959, the argument here is founded on a lack of enforcement standards—an alternative basis for finding a Rule unconstitutionally vague. *See Koni-*

**10.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*kov,* 410 F.3d at 1329 ("[A] claimant asserting that a statute is void for vagueness [must] prove *either* that the statute fails to give fair notice of wrongdoing *or* that the statute lacks enforcement standards such that it might lead to arbitrary or discriminatory enforcement." (emphasis added)).

Similarly, in the challenge to Bar Rule 4–7.2(c)(1)(G) prohibiting communications which "promise results," Harrell does not assert merely that the text of the Rule is impermissibly vague. Instead, Harrell contends that the Rule is unconstitutionally vague because it lacks enforcement standards resulting in the Bar's broad interpretation and arbitrary enforcement of the Rule. *See id.* In support of these arguments, Harrell offers examples of what he contends are inexplicably inconsistent applications of those Rules.[11] *See* Harrell Motion at 9–10; *see generally* Notice. In response, the Bar attempts to explain why the decisions cited by Harrell are not inconsistent.[12] *See* Third Tarbert Aff. ¶¶ 9–12.

Upon review of the record in this case, the Court finds that Harrell has not demonstrated that the "quality of services" and "promises results" Rules delegate so much authority to those charged with enforcing them that there is a risk of arbitrary or discriminatory enforcement. Although the record reveals that the Bar has broadly interpreted these Rules to prohibit statements that merely imply that a lawyer possesses a particular quality or will provide a certain benefit, a broad application of the Rules does not necessarily render

---

11. As to the "promises results" Rule, Harrell contrasts the following advertising decisions: "People make mistakes, I help fix them" violates the Rule whereas "People make mistakes, I help them" does not. *See* Harrell Decl., Ex. 12 at 2.
"We'll help you get a positive perspective on your case and get your defense off on the right foot quickly" violates the Rule but "If an accident has put your dreams on hold we are here to help you get back on track" does not. *See* Harrell Decl., Ex. 12 at 25, 29.
"Remember, your lawyer's knowledge of the law and talents in the courtroom can mean the difference between a criminal conviction and your freedom" violates the Rule whereas "The lawyer you choose can help make the difference between a substantial award and a meager settlement" does not. *See* Harrell Decl., Ex. 12 at 71; *id.,* Ex. 23 at 9–10.
With respect to the "quality of services" Rule, Harrell offers the following examples:
"Make the right choice!" and "When who you choose matters most" violate the Rule, but "Choosing the right person to guide you through the criminal justice system may be your most important decision. Choose wisely." does not. *See* Harrell Decl., Ex. 12 at 14; Ex. 14 at 3; Ex. 15 at 3.

"You need someone who you can turn to, for trust and compassion with this delicate matter" violates the Rule, but "Caring Representation in Family Law Matters. I want to help you through this difficult time." does not. *See* Harrell Decl., Ex. 8 at 56; Ex. 12 at 51.
In addition, the Notice contains a list of advertising decisions by the Florida Bar which Harrell believes demonstrate inconsistent applications of these Rules. *See generally* Notice.

12. On August 11, 2011, the Bar filed a Request for Leave to Respond to Plaintiffs' Notice of Identifying Inconsistent Applications of Advertising Rules (Doc. No. 76; Request for Leave). In the Request for Leave, the Bar seeks permission to file a response to the Notice providing "additional information and/or explanation necessary to understand the distinction between the permissible and impermissible ads, such as the context of the advertisement and pertinent portions of the advisory opinion" as well as "subsequent actions taken by the Standing Committee on Advertising." *See* Request for Leave at 1. Upon review, the Court determines that a response to the Notice is not necessary and will deny the Request for Leave.

them unconstitutionally vague. *See Mason*, 208 F.3d at 959 (finding that although a rule was "capable of multiple meanings" and "potentially very broad application," the rule's language was plain and would adequately put lawyers on notice of what was prohibited). In the past, the Supreme Court has struck down statutes where criminal culpability was tied to terms such as " 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *See Holder v. Humanitarian Law Project*, — U.S. —, 130 S.Ct. 2705, 2720, 177 L.Ed.2d 355 (2010) (internal quotations omitted). In contrast, the terms "promises results" and "quality of the lawyer's services," when viewed in the context of lawyer advertising, do "not require similarly untethered, subjective requirements." *See id.* Rather, these terms have a core meaning such that they provide a "sufficiently clear and definite standard" to those charged with enforcing them, *see First Vagabonds*, 610 F.3d at 1287, and "a reasonable opportunity to know what is prohibited" to those lawyers of "ordinary intelligence" seeking to follow them, *see Leib*, 558 F.3d at 1311; *Mason*, 208 F.3d at 959.

Moreover, to the extent the examples offered by Harrell reveal some inconsistency in the application of the Rules, the fact that different reviewers have occasionally had different interpretations does not render the Rules unconstitutionally vague.

*See First Vagabonds*, 610 F.3d at 1288. The record of advertising decisions reflects that lawyers have attempted to craft advertisements which imply the positive attributes and results that they are prohibited from stating outright. As a result, the Bar's application of the Rules to these carefully worded advertisements often appears to turn on fine, and at times almost imperceptible, distinctions. However, the existence of these more nuanced distinctions does not render the Rules so subjective as to lack any enforcement standards at all. Indeed, difficulty applying the Rules "on the margins does not nearly establish that the [Rule] delegates to the [reviewers] 'a virtually unrestrained power' " to find that an advertisement violates the Rule. *Id.* at 1287. Thus, while compliance with the advertising rules may be challenging, that "does not render those provisions unconstitutionally vague." *Capoccia*, 1990 WL 211189, at *9. Regardless, between 1994 and 2008, the Bar's Ethics Department issued 52,741 advisory opinions on lawyer advertisements, *see* Second Tarbert Aff. ¶ 6, and yet, Harrell has provided the Court with only a handful of examples of arguably inconsistent or conflicting decisions. *See generally* Notice. As such, it appears that in most cases a Rule's application to a particular advertisement is plain.[13] Additionally, the constitutionality of these Rules is bolstered by the availability of advisory opinions to assist members of the Bar where the marginal

---

**13.** The Court notes that only three percent of those advisory opinions were appealed to the Bar's Standing Committee on Advertising. *See* Second Tarbert Aff. ¶ 9. The Standing Committee affirmed eighty-two percent of those appeals, and affirmed, in part, an additional six percent. *See id.* Additionally, only one half of one percent of the opinions were then appealed from the Standing Committee, fifty-five percent of which were affirmed by the Board with another eight percent affirmed in part. *Id.* ¶ 10. While the import of these statistics is of limited value without more information, the record of appeals nevertheless suggests that the individuals interpreting the Rules are usually in agreement as to the standards for enforcing the Rules and the application of those Rules to particular advertisements.

applications of the Rules may otherwise be unclear. *See Mason*, 208 F.3d at 959 n. 4. Because Harrell has failed to demonstrate that the "promises results" and "quality of services" Rules have "no core," *Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. 1186, the Court finds that Bar Rules 4–7.2(c)(2) and 4–7.2(c)(1)(G) are not unconstitutionally vague.[14]

### 2. Manipulative

■■ Turning next to Rules 4–7.2(c)(3) and 4–7.5(b)(1)(A) which prohibit "manipulative" features in advertisements, the Court determines that the term "manipulative" is so vague that it fails to adequately put members of the Bar on notice of what types of advertisements are prohibited.[15] The Bar does not set forth any definition of "manipulative" in Rules 4–7.2(c)(3) and 4–7.5(b)(1)(A) and the Rules do not include any standard by which to assess whether an advertisement is imper-missibly manipulative. In the context of legal advertising, the term "manipulative" could arguably apply to almost every advertisement. As the Eleventh Circuit explained in *Harrell II*, "almost every television advertisement employs visual images or depictions that are designed to influence, and thereby 'manipulate,' the viewer into following a particular course of action, in the most unexceptional sense." *Harrell II*, 608 F.3d at 1255. Thus, in the absence of any objective criteria or applicable standards, the Bar has unbridled discretion in determining which advertisements it wishes to prohibit as impermissibly "manipulative." Notably, in 2004, a majority of the Florida Bar's advertising task force committee agreed that the rule was "incapable of definition, too subjective, and too difficult to enforce," but a motion to delete references to the word in the Rules failed by one vote because the determinative voter "could not support the motion [to de-

---

**14.** The Court questions whether Harrell's quarrel with the "quality of services" and "promises results" Rules is, not that they are enforced too arbitrarily, but more that they are enforced too broadly. Notably, Harrell is limited to challenging these Rules on vagueness grounds because, as lawyer advertising is commercial speech, the overbreadth doctrine does not apply, *see Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. 1186 ("[T]he overbreadth doctrine does not apply to commercial speech."), and a challenge to these Rules on First Amendment grounds is not ripe for review. *See Harrell II*, 608 F.3d at 1262. Nonetheless, even if the Bar's broad application of the Rules impermissibly restricts protected commercial speech, an issue not before the Court, that consideration is not relevant to this vagueness challenge. *See Holder*, 130 S.Ct. at 2719; *Capoccia*, 1990 WL 211189, at *10.

**15.** Significantly, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *See Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. 1186.

As such, the Supreme Court instructs that a court should "examine the complainant's conduct before analyzing other hypothetical applications of the law." *Id.* To that end, the Court notes that in *Harrell II*, the Eleventh Circuit found that "Harrell has made an adequate threshold showing of vagueness in the application of the [R]ules to his proposed advertisements, so that he may credibly claim to have suffered an injury-in-fact in the form of self-censorship." *Harrell II*, 608 F.3d at 1256–57. Upon further review at this stage in the proceedings, the Bar has presented, and this Court can discern, no reason to depart from the Eleventh Circuit's threshold determination. It remains entirely unclear whether Harrell's proposed advertisements, *see id.* at 1250–52, would be prohibited as "manipulative" or barred for lack of "useful" information. While it appears that those Rules may potentially apply to prohibit his "family-themed" and "choices-themed" advertisements, the advertisements are far from "clearly proscribed" under the Rules. *See Harrell II*, 608 F.3d at 1262–64.

lete] in the absence of a viable alternative." *See* Harrell Decl., Ex. 10 at A–56. On this record, the Court finds that the Rules prohibiting "manipulative" features fail to provide adequate notice of what is prohibited and are susceptible to arbitrary enforcement. *See United Food & Commercial Workers Union v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir.1998)(finding the term "aesthetically pleasing" impermissibly vague because it is not susceptible to objective definition and therefore poses the danger of arbitrary and discriminatory application).

Moreover, the Bar's argument that the use of the term "manipulative" in various securities statutes demonstrates its clarity does not persuade the Court otherwise. The word "manipulative" is "virtually a term of art when used in connection with the securities markets. It connotes intentional or willful conduct *designed to deceive or defraud* investors by controlling or artificially affecting the price of securities." *See Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 6, 105 S.Ct. 2458, 86 L.Ed.2d 1 (1985) (internal quotations omitted). In that context, the Supreme Court has interpreted the term "manipulative" to require misrepresentation. *Id.* at 7–8, 105 S.Ct. 2458. This definition, however, is not consistent with the Bar's application of the term "manipulative" in the context of lawyer advertising in that the Bar prohibits advertisements as manipulative even where there appears to be no actual misrepresentation. *See* Third Tarbert Aff. ¶ 8; Second Tarbert Aff. ¶¶ 11–13. Thus, securities statutes and cases do little to clarify the meaning of "manipulative" here, and the Bar's reliance on securities law is unavailing.

In addition, unlike the "promises results" and "quality of services" Rules, the availability of advisory opinions does not ameliorate the vagueness problem with "manipulative." Because the "manipulative" Rules lack any "core" meaning, the availability of "necessarily arbitrary opinions," *see Harrell II*, 608 F.3d at 1264 n. 8, does not render the Rules any less vague or restrain the Bar's discretion in applying them. Indeed, the Bar's enforcement of these Rules demonstrates their arbitrary application. Although the Bar attempts to explain the inconsistent applications, its explanations do not reveal any particular standard or definition that applies, but instead amount to case-by-case rationalizations without any connection to the language of the Rules. *See* Bar Motion at 11–12. Finally, the Court notes that "[a]lthough due process does not require 'impossible standards' of clarity, this is not a case where further precision in the ... language is either impossible or impractical." *See Kolender v. Lawson*, 461 U.S. 352, 361, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (internal citation omitted) (quoting *United States v. Petrillo*, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947)).[16] Thus, because the Rules as presently written specify "no standard of conduct" at all, *Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. 1186 (internal quotations omitted), the Court finds that Rules 4–7.2(c)(3) and 4–7.5(b)(1)(A) are void for vagueness.

### 3. Useful, Factual Information

■ Similarly, the comment to Rule 4–7.1 which states that advertisements should provide only "useful, factual information" is also impermissibly vague. The

---

**16.** Indeed, without considering whether the Revised Rules pass constitutional muster, the Court observes that the Revised Rules filed by the Bar demonstrate that a more precise description of the advertising techniques which the Bar considers impermissibly manipulative is possible. *See* Revised Rules at 57–58.

term "useful" has no objective definition and the Bar does not set forth any explicit standards as to how it will determine what is or is not "useful" in the context of legal advertising. As such, the term is "far too subjective in its application to pass constitutional muster." *See Big Mama Rag, Inc. v. United States,* 631 F.2d 1030, 1035–36 (D.C.Cir.1980)(noting with approval the district court's rejection of a provision which measured an organization by whether it provides "instruction of the public on subjects useful to the individual and beneficial to the community" because such a standard was "far too subjective in its application to pass constitutional muster"). Because lawyers of common intelligence could easily differ on what constitutes "useful" information in an attorney advertisement, this provision fails to provide any notice, much less "fair notice" of what is prohibited to the members of the Florida Bar. *See Eaves,* 601 F.2d at 830–31. Thus, the Court will grant the Harrell Motion to the extent Harrell requests that the Court enjoin enforcement of this provision as well.[17]

## V. As–Applied First Amendment Challenges

### A. Summary of the Arguments

Next, Harrell asserts a First Amendment challenge to Rules 4–7.2(c)(2) and 4–7.5(b)(1)(C). *See* Harrell Motion at 13. Harrell contends that the prohibition on all background sounds except instrumental music violates the First Amendment by impermissibly restricting commercial speech. In addition, Harrell asserts that the application of Rule 4–7.2(c)(2) which prohibits statements describing the quality of a lawyer's legal services to the phrase "Don't settle for less than you deserve" violates the First Amendment. Harrell argues that the Bar does not have a substantial interest in ensuring that attorney advertisements contain only helpful, relevant information, *id.* at 15–16, nor a substantial interest in protecting the dignity of the legal profession. *See id.* at 21–23. However, even if the Bar does have such substantial interests, Harrell maintains that the Bar has failed to present any

---

17. At the Hearing, the Bar argued that the Court should not enjoin enforcement of the "useful, factual information" provision because the Bar never intended to enforce the comment as an independent restriction. The Bar does not raise this argument in its briefs, and has not provided the Court with any authority to support this argument. Significantly, at this, the summary judgment stage of these proceedings, the Bar fails to present the Court with any evidence that the "useful, factual" provision is not enforced by the Bar. In contrast, Harrell submits the Harrell Declaration in which Harrell avers that he wishes to develop and run advertisements with features that he fears would violate the "useful, factual information" provision of the Rules, and that this provision has deterred him from developing those advertisements. *See* Harrell Decl. ¶¶ 21–22, 28. Indeed, in *Harrell II*, the Eleventh Circuit considered the language in the comment to Rule 4–7.1 and held that "Harrell can credibly claim to be confused in determining whether his [proposed advertisement]

satisfies this highly subjective requirement." *Harrell II,* 608 F.3d at 1255. Moreover, in *Pape,* the Florida Supreme Court determined that an attorney's advertisement failed to "comport with the general criteria for permissible attorney advertisements set forth in the comments to section 4–7 of the Rules of Professional Conduct," and specifically referenced the "useful, factual information" language set forth in the comment to Rule 4–7.1. *See Pape,* 918 So.2d at 243. While the *Pape* Court found that the subject advertisement violated other, more specific Rules as well, the court's reference to this language suggests that lawyers are expected to adhere to this standard. As such, the Court finds no merit to the Bar's last-minute assertion that an injunction against enforcement of this provision is unnecessary or inappropriate simply because it is set forth in a comment and not Rule 4–7.1 itself.

evidence that the challenged Rules are effective in promoting those interests. *Id.* at 17–20, 24. Finally, Harrell asserts that, to the extent the Bar can establish that the Rules are effective in advancing the above interests, the Court should still find the Rules unconstitutional because the Rules are not narrowly tailored to serve those interests. *Id.* at 20–21, 25.

In the Bar Motion, the Bar contends that although the Board has found "Don't settle for less than you deserve" not to violate Rule 4–7.2(c)(2), the Bar's prior rejection of the phrase was within the constitutional parameters for the regulation of lawyer advertising. *See* Bar Motion at 14. The Bar maintains that the First Amendment protects lawyer advertising only "to the extent that it provides accurate factual information that can be objectively verifiable [sic]." *Id.* As such, the Bar appears to argue that because "Don't settle for less than you deserve" is not a factual statement that can be objectively verified, the Bar may reject the phrase without infringing on the First Amendment. *See* Bar Reply at 8.

■ In addition, the Bar asserts that Rule 4–7.5(b)(1)(C), which prohibits all

background sounds except instrumental music in television and radio advertising, must be read "in pari *materia*" with Rule 4–7.2(c)(16) which applies to all advertisements and prohibits only sounds that are "deceptive, misleading, manipulative, or ... likely to confuse the listener." *See* Bar Motion at 16. The Bar contends that, to the extent the First Amendment applies, the Bar has a substantial interest in "ensuring that the public has access to information that is not misleading to assist the public in the comparison and selection of attorneys," and in "preventing the erosion of the public's confidence and trust in the judicial system and curbing activities that negatively affect the administration of justice." *Id.* at 17–18. The Bar argues that the advertising Rules promote those interests and in support, the Bar generally refers the Court to a study conducted in 1989 on the effect of lawyer advertising on public opinion. *Id.* at 19. In addition, the Bar provides the Court with studies and surveys collected by a Florida Bar task force in 1997 concerning lawyer advertising.[18] *Id.* at 19–20. The Bar maintains that the Rules in question are not more extensive than necessary to advance the Bar's substantial interests because "they propose to ensure the truthful dissemina-

---

**18.** Although the Bar filed voluminous documents, including lengthy studies on lawyer advertising, in support of the Bar Motion, it failed to provide the Court with specific citations to the particular portions of those documents and studies it contends support the Bar's position. Rule 56 provides that a party must support all assertions made in support or in opposition to a motion for summary judgment by "citing to particular parts of materials in the record...." *See* Rule 56(c)(1)(A). Moreover, while the Court may consider other evidence, "[t]he court need consider only the cited materials...." Rule 56(c)(3). While the Court recognizes that the amendments to Rule 56 adding this language became effective only days before the Bar filed the Bar Motion, these amendments

merely reflect obligations that already existed under the law. *See Lawrence v. Wal–Mart Stores, Inc.*, 236 F.Supp.2d 1314, 1322 (M.D.Fla.2002)("It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment...."). Thus, the Court need not scour un-cited portions of the summary judgment record, including the lengthy studies on lawyer advertising, searching for evidence that might bolster either side's argument. Nevertheless, the Court has reviewed these filings and, as explained below, finds no support for the Bar's position.

tion of information by regulating, not prohibiting, legal advertising." *Id.* at 21 (internal quotation omitted).

## B. Applicable Law

■ In First Amendment challenges to restrictions on commercial speech, the Supreme Court instructs that a four-part analysis applies. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). First, the Court must determine whether the expression is protected by the First Amendment. *Id.* "For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading." *Id.* Next, the Court should consider "whether the asserted governmental interest is substantial." *Id.* If so, then the Court must determine whether the regulation "directly advances the governmental interest asserted," and finally, "whether it is not more extensive than is necessary to serve that interest." *Id.* This analysis is known as the *Central Hudson* test. *See Mason,* 208 F.3d at 955–56. Significantly, "[w]here, as here, a plaintiff mounts an as-applied challenge to an alleged burden on commercial speech, '[i]t is well established that the party seeking to uphold the restriction on commercial speech carries the burden of justifying it.'" *See Jacobs v. Fla. Bar,* 50 F.3d 901, 906 (11th Cir.1995)(quoting *Edenfield v. Fane,* 507 U.S. 761, 770, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993)); *Mason,* 208 F.3d at 958 ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." (internal quotations omitted)).

## C. Discussion

### 1. Unlawful or Misleading?

■ "The First Amendment's concern for commercial speech is based on the informational function of advertising." *Central Hudson,* 447 U.S. at 563, 100 S.Ct. 2343. Consequently, the Supreme Court instructs that:

> [t]he States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, or that proposes an illegal transaction. Commercial speech that is not false or deceptive and does not concern unlawful activities, however, may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest.

*Zauderer v. Office of Disciplinary Counsel of the Sup.Ct. of Ohio,* 471 U.S. 626, 638, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *see also Fla. Bar v. Went For It, Inc.,* 515 U.S. 618, 623–24, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (explaining that "the government may freely regulate commercial speech that concerns unlawful activity or is misleading. Commercial speech that falls into neither of those categories . . . may be regulated if the government satisfies" the three remaining *Central Hudson* prongs). As such, the government "may not place an absolute prohibition on certain types of *potentially* misleading information . . . if the information also may be presented in a way that is not deceptive." *See In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982) (emphasis added). In addition, the Supreme Court has held that illustrations and pictures are entitled to the same First Amendment protections afforded verbal commercial speech because their use "serves important communicative functions" in that "it attracts the attention of the audience to the advertiser's message, and it may also serve to impart information directly." *See Zauderer,* 471 U.S. at 647, 105 S.Ct. 2265. Indeed, "even

a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment." *Edenfield,* 507 U.S. at 767, 113 S.Ct. 1792.

### a. "Don't settle for less than you deserve"

■ Turning to Harrell's challenge relating to the slogan "Don't settle for less than you deserve," the Court first emphasizes that this First Amendment challenge is "as-applied." *See Harrell II,* 608 F.3d at 1259, 1271. Thus, despite the broad scope of Harrell and the Bar's arguments, the issue before the Court is not whether the Bar may prohibit all quality of service statements, but rather, whether the Bar may prohibit Harrell from using the slogan "Don't settle for less than you deserve"

based on a rule that prohibits statements describing the quality of a lawyer's services.[19] *See Holder,* 130 S.Ct. at 2724; *Zauderer,* 471 U.S. at 647, 105 S.Ct. 2265 ("[T]he burden is on the State to present a substantial governmental interest justifying the restriction as *applied* to [the attorney] and to demonstrate that the restriction vindicates that interest through the least restrictive available means." (emphasis added)); *In re R.M.J.,* 455 U.S. at 205–06, 102 S.Ct. 929; *Mason,* 208 F.3d at 956–58. Notably, in the instant case, the parties agree that "Don't settle for less than you deserve" is *not* a statement characterizing the quality of a lawyer's services.[20] Thus, the Court need not determine at this time whether a broad prophylactic ban on all quality of service statements is in keeping with the First Amendment. *See Zauderer,* 471 U.S. at 640 n. 9, 105 S.Ct. 2265

**19.** In early September 2007, Harrell submitted an advertising campaign, which included the phrase, "Don't settle for less than you deserve," to the Bar for review. *See* Harrell Decl. ¶ 11 & Ex. 2. On September 21, 2007, the staff attorney assigned to review Harrell's advertisements advised him that the advertisements did not comply with the advertising rules because the phrase, "Don't settle for less than you deserve," "describes or characterizes the quality of the services being offered in violation of Rule 4–7.2(c)(2)." *Id.* ¶ 12 & Ex. 2. The staff attorney also noted one additional violation, a failure to identify the location of Harrell's bona fide office, *id.,* Ex. 2 at 2, which was later remedied, *see id.,* Ex. 3 at 1–2. Thus, the only remaining violation in the advertising campaign was the use of the phrase, "Don't settle for less than you deserve," in contravention of Rule 4–7.2(c)(2). *See id.,* Ex. 3 at 1–2. After finding that the advertisements did not comply with the Rules, the staff attorney cautioned that "[u]se of the advertisements may result in disciplinary action" and recommended that Harrell revise the advertisements. *Id.,* Ex. 2 at 2.

In response to this decision, on September 26, 2007, Harrell asked the staff attorney to reconsider her decision. *Id.* ¶ 13. Upon receipt of this letter, the staff attorney construed

Harrell's request as one seeking review of the decision by the Bar's Standing Committee on Advertising (SCA). *See id.,* Ex. 3. Consequently, the request was treated as an appeal. *See id.* On October 10, 2007, Harrell formally appealed the staff attorney's determination to the SCA. *See id.* ¶ 14, Ex. 4. The SCA affirmed the staff decision on November 26, 2007, finding that the phrase violated Rule 4–7.2(c)(2) by characterizing the quality of legal services offered. *See id.* ¶ 15 & Ex. 6. In doing so, the SCA also cautioned Harrell that "[u]se of the advertisements may result in disciplinary action" and recommended that Harrell revise the advertisements. *See id.,* Ex. 6. Thus, the as applied challenge before the Court is the Bar's rejection of the slogan "Don't settle for less than you deserve" based upon the application of Rule 4–7.2(c)(2).

**20.** Although the Bar's position on the nature of "Don't settle for less than you deserve" was unclear from its briefs, counsel for the Bar clarified its position at the Motion Hearing and conceded that the slogan is not a statement of quality, but rather, in the Bar's opinion, a general statement of what a consumer should be looking for in a law firm or attorney.

("[O]ur decisions have left open the possibility that States may prevent attorneys from making nonverifiable claims regarding the quality of their services...."); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383–84, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) ("[A]dvertising claims as to the quality of services a matter we do not address today are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction."); *In re R.M.J.*, 455 U.S. at 201, 102 S.Ct. 929.

In the instant matter, the Bar has not presented any evidence that "Don't settle for less than you deserve" actually misled or deceived anyone. *See Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 106, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990) ("Given the complete absence of any evidence of deception in the present case, we must reject the contention that petitioner's letterhead is actually misleading."). Indeed, at the Hearing, the Bar conceded that "Don't settle for less than you deserve" was neither actually nor inherently misleading. Thus, because "Don't settle for less than you deserve" is commercial speech which does not propose an unlawful transaction, and is not false, deceptive or misleading, to sustain its restriction of the slogan, the Bar must satisfy the remaining three prongs of the *Central Hudson* test.[21] *See Went For It, Inc.*, 515 U.S. at 623–24, 115 S.Ct. 2371.

### b. Background Sounds

The Bar does not contend that background sounds other than instrumental music in television or radio advertisements are actually or inherently misleading. Instead, the Bar maintains that Rule 4–7.5(b)(1)(C) must be read *"in pari materia"* with Rule 4–7.2(c)(16) which provides that "[a] lawyer shall not include in any advertisement or unsolicited written communication any sound that is deceptive, misleading, manipulative, or that is likely to confuse the listener." *See* Bar Motion at 16. Rule 4–7.2(c)(16) was approved by the Florida Supreme Court in 2009, and became effective in February of 2010. At the May 11, 2010 meeting of the Florida Bar's Standing Committee on Advertising, the committee voted to apply Rule 4–7.2(c)(16) to sounds in television and radio advertising "and directed staff to draft amendments to Rule 4–7.5 to make it consistent with Rule 4–7.2(c)(16)." *See* Third Tarbert Aff., Ex. A at 2. Thus, the Bar

**21.** To the extent the Bar argues in the Bar Motion and Bar Reply that "Don't settle for less than you deserve" is not protected under the First Amendment because it does not provide "accurate factual information that can be objectively verifiable [sic]," *see* Bar Reply at 8; Bar Motion at 14, the Bar abandoned this argument at the Hearing and acknowledged that "Don't settle for less than you deserve" is entitled to the First Amendment protections afforded commercial speech. Regardless, the Court finds that the Bar's prior position to the contrary is without merit. *See Went For It, Inc.*, 515 U.S. at 623–24, 115 S.Ct. 2371 (explaining that "the government may freely regulate commercial speech that concerns unlawful activity or is misleading. Commercial speech that falls into neither of those categories ... may be regulated if the government satisfies" the three remaining *Central Hudson* prongs); *Edenfield*, 507 U.S. at 767, 113 S.Ct. 1792 ("[E]ven a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment."); *see also Alexander v. Cahill*, 598 F.3d 79, 89 (2d Cir.2010) *cert. denied* —— U.S. ——, 131 S.Ct. 820, 178 L.Ed.2d 576 (2010); *Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.*, 134 F.3d 87, 96–97 (2d Cir.1998) ("Though the label communicates no information beyond the source of the product, we think that minimal information, conveyed in the context of a proposal of a commercial transaction, suffices to invoke the protections for commercial speech, articulated in *Central Hudson*.").

maintains that rather than the categorical ban set forth in Rule 4–7.5(b)(1)(C), the Court should interpret the Rule as prohibiting only background sounds that are "deceptive, misleading, manipulative, or likely to confuse the listener." *See* Bar Motion at 16.

However, the Bar's proposed interpretation of Rule 4–7.5(b)(1)(C) is not well taken. As with the Revised Rules discussed above, *see* note 7, to the extent the Bar intends to remove the categorical ban on background sounds from the Rules, it has not yet done so. While the Court recognizes that the categorical ban is not included in the proposed Revised Rules, *see* Revised Rules at 20, 57, those Rules remain subject to the approval of the Florida Supreme Court. Thus, at present, Rule 4–7.5(b)(1)(C) is still the governing Rule and is still enforceable against Harrell. The Bar has not presented the Court with any record evidence that this Rule is no longer enforced according to its categorical terms, nor is there an opinion by the Florida Supreme Court limiting the Rule in the manner suggested by the Bar. Accordingly, the Bar is free to enforce the categorical Rule as written. Indeed, in the Harrell Declaration, Harrell asserts that the Bar's rule prohibiting background sounds has forced him to abandon various advertising campaigns that he otherwise would have developed. *See* Harrell Decl. ¶¶ 21, 24. Because this Rule continues to chill Harrell's speech, the Court will reject the Bar's latest attempt to avoid review of Rule 4–7.5(b)(1)(C) on the merits. *See* supra at 2–3.

Moreover, the Court declines to interpret this rule *in pari materia* with Rule 4–7.2(c)(16) in the manner asserted by the Bar. "When the language of the [rule] is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *See Blanton v. City of Pinellas Park*, 887 So.2d 1224, 1230 (Fla. 2004). Here, the meaning of Rule 4–7.5(b)(1)(C) is plain—the Rule categorically bans all background sounds in television and radio advertisements except instrumental music. Thus, the Court need not resort to the rules of statutory construction in order to determine its meaning. Regardless, even considering this Rule *in pari materia* with Rule 4–7.2(c)(16), the Court would not adopt the construction asserted by the Bar. The Bar argues that the Court should interpret Rule 4–7.5(b)(1)(C) to have exactly the same meaning as Rule 4–7.2(c)(16). *See* Bar Motion at 16. However, this interpretation would render Rule 4–7.5(b)(1)(C) entirely redundant and meaningless, a result that courts should avoid when interpreting enactments. *See State v. Goode*, 830 So.2d 817, 824 (Fla.2002) ("In addition to the statute's plain language, a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless."). Rather, to harmonize the Rules, and give effect to each, *State v. Burkhart*, 869 So.2d 1242, 1245 (Fla. 4th Dist.Ct.App.2004), the Court interprets Rule 4–7.2(c)(16) to prohibit all deceptive or misleading sounds, and Rule 4–7.2(b)(1)(C) to impose the additional restriction in the context of television and radio advertising that all background sounds except instrumental music are pro-

hibited as well.[22] Accordingly, to the extent the Bar asserts that Rule 4–7.5(b)(1)(C) does not contravene the First Amendment in that it only prohibits deceptive or misleading sounds, this argument is without merit.

Given the broad scope of the parties' arguments, it bears repeating that Harrell's First Amendment challenge to Rule 4–7.5(b)(1)(C) is also "as-applied." *See Harrell*, 608 F.3d at 1262. Harrell seeks to develop and disseminate advertisements containing background noises caused by his dogs, by gym equipment and by other activities in his law firm. *See* Harrell Decl. ¶ 28. Thus, Harrell's as-applied First Amendment challenge is to the categorical prohibition of those sounds under Rule 4–7.5(b)(1)(C). *See Harrell II*, 608 F.3d at 1262. Because such background sounds are, at worst, only potentially misleading, the Bar must satisfy the remainder of the *Central Hudson* test in order to sustain the Rule as it would be applied in this case.

### 2. Substantial State Interest?

"Unlike rational basis review, the *Central Hudson* standard does not permit [the Court] to supplant the precise interests put forward by the State with other suppositions." *Harrell II*, 608 F.3d at 1269. The Bar asserts two substantial interests in support of its advertising regulations. First, the Bar contends that it has an interest in "ensuring that the public has access to information that is not misleading to assist the public in the comparison and selection of attorneys." *See* Bar Mo-

tion at 17. The Eleventh Circuit in *Mason* recognized that "the state has both a general interest in protecting consumers, as well as a special responsibility to regulate lawyers." *See Mason*, 208 F.3d at 956. As such, the *Mason* Court found that the Bar has a substantial interest "in ensuring that attorney advertisements are not misleading" and "in ensuring that the public has access to relevant information to assist in the comparison and selection of attorneys." *Id.*

Second, the Bar asserts an interest in "preventing the erosion of the public's confidence and trust in the judicial system and curbing activities that negatively affect the administration of justice." *See* Bar Motion at 17–18. With respect to this second interest, the Eleventh Circuit explained in *Harrell II* that:

> the Bar has a "paramount . . . objective of curbing activities that negatively affec[t] the administration of justice." Specifically, the Bar has an interest in preventing "reputational harm to the profession," and in "preserv[ing] [its] integrity." Thus, in *Went For It*, [515 U.S. at 625, 115 S.Ct. at 2379,] the Supreme Court recognized the Bar's interest in maintaining a rule designed to "protect the flagging reputations of Florida lawyers by preventing them from engaging in conduct that . . . is universally regarded as deplorable and beneath common decency." Beyond these general interests of the Bar in regulating attorney advertising, the Supreme Court has recognized that "the special problems of advertising on the

---

**22.** Notably, the Eleventh Circuit found Rule 4–7.5(b)(1)(C) to be fit for First Amendment review specifically *because* its application was "categorical and thus clear." *Harrell II*, 608 F.3d at 1262. If the Court were to interpret this Rule in the manner suggested by the Bar, the application of the Rule would be unclear, thus raising the same "serious fitness concerns" that led the Eleventh Circuit to hold that the other eight rules Harrell originally challenged were not ripe for review. *See id.* at 1262–65.

electronic broadcast media will warrant special consideration."

*Harrell II,* 608 F.3d at 1269–70 (internal citations omitted) (omissions and first three alterations in original). Thus, pursuant to *Mason* and *Harrell II,* the Court finds that the Bar has demonstrated substantial interests sufficient to satisfy this prong of the *Central Hudson* test.

### 3. Advances the Asserted Interests?

■■■ The third prong of *Central Hudson* requires that "a regulation impinging upon commercial expression 'directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose.'" *See Edenfield,* 507 U.S. at 770, 113 S.Ct. 1792. Indeed, "a state's restrictions on speech [must] target an identifiable harm and ... [must] mitigate against such harm in a direct and effective manner." *Mason,* 208 F.3d at 956. Thus, the Bar must "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *See Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation,* 512 U.S. 136, 146, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994). Significantly, "mere speculation or conjecture" are not sufficient to satisfy the government's burden, *see Edenfield,* 507 U.S. at 770–71, 113 S.Ct. 1792, and the Bar cannot satisfy its burden merely "by rote invocation of the words 'potentially misleading.'" *Id.* Indeed, "[w]hile empirical data supporting the existence of an identifiable harm is not a sine qua non for a finding of constitutionality, the Supreme Court has not accepted 'common sense' alone to prove the existence of a concrete, nonspeculative harm." *Mason,* 208 F.3d at 957–58 (collecting cases).

### a. "Don't settle for less than you deserve"

Upon review of the record, the Court finds no evidence that prohibiting the use of the phrase "Don't settle for less than you deserve" advances the Bar's asserted interests in a material way. The Bar does not articulate any basis for believing that "Don't settle for less than you deserve" could potentially mislead the public or erode the public's confidence in the legal profession. *See Mason,* 208 F.3d at 958 ("The Bar has the burden in this case of producing concrete evidence that Mason's use of the words 'AV Rated, the Highest Rating' threatened to mislead the public."). Moreover, the Bar presents no *evidence,* anecdotal or otherwise, that the phrase has misled the public or tarnished the reputation of the legal profession in the public's eyes. *Mason,* 208 F.3d at 957. Instead, the Bar generally cites to data which purportedly shows that television advertising "lowers the public's respect for the fairness and integrity of the legal system and adversely affects the system." *See* Bar Motion at 21; *see generally* Doc. 25, Exs. 5–8. However, even if the Court accepts the Bar's characterization of this data, evidence that the public dislikes television advertising *generally* does little to inform the Court as to any harms potentially caused by Harrell's slogan *specifically.* *See Zauderer,* 471 U.S. at 643, 105 S.Ct. 2265 ("The State's argument that it may apply a prophylactic rule to punish appellant notwithstanding that his particular advertisement has none of the vices that allegedly justify the rule is in tension with our insistence that restrictions involving commercial speech that is not itself deceptive be narrowly crafted to serve the State's purpose.").

Most significantly, the Bar acknowledges that "Don't settle for less than you deserve" does not violate the rule prohibiting statements characterizing or describing the quality of a lawyer's statements. Indeed, the Bar now agrees that Harrell's

use of this statement in his advertising campaign is entirely permissible under the Bar Rules. Thus, the Court cannot discern how applying Bar Rule 4–7.2(c)(2) in a manner that prohibits a slogan which the Florida Bar finds unobjectionable could possibly serve the Florida Bar's substantial interests "in a direct and effective manner." *Mason*, 208 F.3d at 956. At the very least, applying the Rule in this manner is "broader than reasonably necessary to prevent" the cited harms. *See In re R.M.J.*, 455 U.S. at 203, 102 S.Ct. 929 (explaining that although "the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception."). As such, the Court concludes that the application of Bar Rule 4–7.2(c)(2) to prohibit

use of the slogan "Don't settle for less than you deserve" is an unconstitutional restriction of Harrell's First Amendment rights under the circumstances of this case.[23] Accordingly, the Harrell Motion is due to be granted to the extent Harrell seeks summary judgment on his as-applied challenge to the Bar's rejection of "Don't settle for less than you deserve." [24]

### b. Background Sounds

In support of the Bar's proposition that the prohibition on background sounds advances its substantial interests, the Bar relies on a study, published in 1989, on the effects of lawyer advertising on public opinion. *See* Bar Motion at 21; *see also* Summary of the Record (Doc. 25–6). The Bar generally refers the Court to the "extremely voluminous" record, *see* Bar Motion at 20, but identifies only one actual

**23.** The Court notes that the Bar again asserted at the Hearing its contention that Harrell's as-applied challenge to "Don't settle for less than you deserve" is moot. The Bar argued that the Bar's submission of the Revised Rules to the Florida Supreme Court conclusively demonstrates that the Bar will not change its position with respect to Harrell's slogan. Notably, the Bar did not raise this argument in its briefs. Regardless, the Court does not find this matter to be moot. The Eleventh Circuit specifically considered and rejected the Bar's argument that Harrell's challenge to the rejection of "Don't settle for less than you deserve" was moot. *See Harrell II*, 608 F.3d at 1265–68. The *Harrell II* Court determined that "the Bar has not borne its heavy burden of showing that it is *'absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *See id.* at 1268 (emphasis in original) (citing *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1131 (11th Cir.2005)). The Eleventh Circuit then remanded the matter to this Court "for consideration of Harrell's justiciable claims on the merits." *Harrell II*, 608 F.3d at 1271.

The Bar has not presented this Court with any new evidence to suggest that the facts of this case have changed such that the Eleventh Circuit's reasoning should no longer apply.

Moreover, the Court is not persuaded that the submission of the Revised Rules to the Florida Supreme Court makes it "absolutely clear" that the Bar will not change its position with respect to the slogan. As the Court previously noted, the Florida Supreme Court may not adopt the Revised Rules. *See supra* note 7. Moreover, despite counsel's assertion that Harrell's as applied challenge is moot in light of the Revised Rules, the Bar has offered no actual evidence as to how Harrell's slogan would be treated under those Rules, if adopted. As such, the fact that the Bar is in the process of revising the advertising rules does not make it "absolutely clear" that the alleged misconduct will not reoccur, and as such, the Eleventh Circuit's determination remains binding on the Court.

**24.** Because the Court finds that the Bar has failed to demonstrate that the rejection of Harrell's slogan advances a substantial state interest, the Court need not consider the fourth prong of the *Central Hudson* test— whether the restriction "is not more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343; *Mason*, 208 F.3d at 958.

study which references background sounds, *see id.* at 21. Specifically, the Bar cites a survey of 196 individuals where, after viewing six lawyer television advertisements, "67% of the respondents approved of the rule banning dramatizations, testimonials, celebrity voices, background sounds, and vocal music on broadcast advertisements. These techniques were seen as deceptive." *See* Summary of the Record (Doc. 25, Ex. 6) at 54. However, for the reasons set forth below, the Court finds that this evidence deserves little weight.

The rule approved by the survey respondents listed background sounds and vocal music alongside dramatizations, testimonials and celebrity voices. *Id.* As such, it is entirely unclear whether, when weighing the ban, the respondents actually considered background sounds independently of the other features listed. Indeed, one cannot discern from the descriptions of the six sample commercials shown to the respondents whether those advertisements even contained background sounds or vocal music. *Id.* at 51–52. Moreover, when the same six commercials were presented to two eleven-person focus groups, the negative feedback on the commercials from the groups did not include any reference to the use of background sounds or vocal music. *See id.* at 50–53. Thus, the Court finds that this survey evidence falls far short of

the type of "concrete evidence" necessary to justify the Bar's categorical restriction on background sounds. *See Mason,* 208 F.3d at 958. Significantly, the Bar cites to no other specific evidence in the record to support its contention that a prohibition on background sounds advances its asserted interests, and the Court independently has found none. Accordingly, this Court "is unwilling to sustain restrictions on constitutionally protected speech based on a record so bare as the one relied upon by the Bar here." *Id.* In the absence of any evidence that prohibiting the type of innocuous non-instrumental background sounds as those proposed by Harrell here will protect the public from being misled or prevent the denigration of the legal profession, the Bar has failed to satisfy the third prong of the *Central Hudson* test.[25] *See Edenfield,* 507 U.S. at 770–71, 113 S.Ct. 1792 ("The burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."). Accordingly, the Harrell Motion is due to be granted on this claim as well.

## VI. Conclusion

In consideration of the foregoing, the Court finds that Rule 4–7.2(c)(1)(G) and

---

**25.** Moreover, even to the extent the Bar could demonstrate that a ban on background sounds materially advances its substantial interests, the Bar cannot satisfy the fourth prong of *Central Hudson* because the categorical prohibition on all background sounds except instrumental music is broader than necessary to serve the Bar's interests. *See Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343. Indeed, the Bar's argument that the instant Rule should be interpreted more narrowly to prohibit only those sounds which

are deceptive, misleading or manipulative demonstrates that even the Bar believes the categorical prohibition is broader than necessary to serve its interests. *See* Bar Motion at 16; Third Tarbert Aff., Ex. A at 2. Thus, because the categorical prohibition on background sounds is not "narrowly tailored" to serve the Bar's stated interests, the Rule fails under the fourth prong of *Central Hudson* as well. *See Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)

Rule 4–7.2(c)(2) are not unconstitutionally vague and the Bar's Motion is due to be granted, in part, to that extent alone. In all other respects, the Bar Motion will be denied. Specifically, the Court determines that Rules 4–7.2(c)(3) and 4–7.5(b)(1)(A), as well as the "useful, factual" comment to Rule 4–7.1 are unconstitutionally vague on their face. Accordingly, the Court will grant Harrell's Motion to that extent and enjoin the enforcement of those Rules. Finally, the Court determines that Rule 4–7.2(c)(2) as applied to "Don't settle for less than you deserve" and Rule 4–7.5(b)(1)(C) as it would apply to the sounds in Harrell's proposed advertisements impermissibly restrict Harrell's First Amendment rights. As such, the Court will grant, in part, Harrell's Motion on that basis as well and enjoin enforcement of those Rules as-applied in this case. In light of the foregoing, it is

**ORDERED:**

1. The Florida Bar's Request for Leave to Respond to Plaintiffs' Notice of Identifying Inconsistent Applications of Advertising Rules (Doc. No. 76) is **DENIED.**

2. Plaintiffs' Motion for Summary Judgment and Memorandum in Support of Motion (Doc. No. 62) is **GRANTED, in part, and DENIED, in part.**

 A. Plaintiffs' Motion is **GRANTED** as follows:

 i. Bar Rules 4–7.2(c)(3) and 4–7.5(b)(1)(A) which prohibit the use of "manipulative" advertisements, and the comment to Bar Rule 4–7.1 requiring advertisements to contain only "useful, factual information"

are void for vagueness. As such, the Florida Bar will be permanently enjoined from enforcing these rules.

 ii. Bar Rule 4–7.2(c)(2) as applied to "Don't settle for less than you deserve" violates Plaintiffs' First Amendment rights. Thus, the Florida Bar will be permanently enjoined from enforcing that Rule in the manner applied to Harrell in this case.

 iii. Bar Rule 4–7.5(b)(1)(C) which prohibits the use of "any background sound other than instrumental music" as it would apply to the background sounds in Harrell's proposed advertisements violates Plaintiffs' First Amendment rights. The Florida Bar will be permanently enjoined from enforcing this Rule in that manner.[26]

 B. In all other respects, Plaintiffs' Motion is **DENIED.**

 C. The Court will enter forthwith a Final Judgment and Permanent Injunction in accordance with the foregoing.

3. Defendants' Motion for Summary Judgment and Memorandum of Law in Support of Motion and in Opposition to Plaintiff's [sic] Motion for Summary Judgment (Doc. No. 65) is **GRANTED, in part, and DENIED, in part.**

 A. Defendants' Motion is **GRANTED** to the extent that the Court finds that Bar Rule 4–7.2(c)(1)(G), which prohibits communications promising results, and Bar Rule 4–7.2(c)(2), which prohibits statements

---

**26.** Specifically, the background sounds in Harrell's proposed advertisements are sounds caused by his dogs, gym equipment, and other activities in the firm. *See* Harrell Decl. ¶ 28.

describing or characterizing the quality of a lawyer's services, are not unconstitutionally vague.

B. In all other respects, Defendants' Motion is **DENIED.**

C. The Court will enter forthwith a separate Final Judgment in accordance with the foregoing.

**DONE AND ORDERED.**